UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                            Case No. 12-CR-00067

LAWRENCE J. POPP,

        Defendant.

---

## REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

---

The defendant Lawrence Popp respectfully requests leave of court to file this reply to the Government's sentencing memorandum filed last week in this case, instanter.

The Government's memorandum addresses: (1) the defendant's objection to grouping in the PSR, which results in a higher Sentencing Guidelines score (16 instead of 14), (2) the amount of restitution, (3) the Government's newly-stated belief that acceptance of responsibility might not be appropriate for Guidelines purposes, and (4) application of the sec. 3553 factors. Mr. Popp, through his counsel, will address each of these in order.

1

1. **Grouping**

While the victim in both counts to which Mr. Popp has been found guilty are the United States Government, Popp agrees with the point made in the Government's sentencing memorandum that separate agencies are involved (SSA and IRS). The PSR writer notes in his Addendum of January 14, 2014 that he believes the PSR is correct as written, counting the offenses as separate and not grouped when calculating under the Guidelines. Nonetheless, Popp maintains this objection for the record and leaves it to the court to decide if it is to be determinative of the ultimate sentence imposed. Popp believes that consideration of the sec. 3553 factors merit a non-prison sentence in his case, and definitely not a sentence of imprisonment of 24 months.

Popp has admitted his criminal conduct by accepting the plea agreement in this case, and at his guilty plea hearing. He has accepted responsibility for his conduct, as the PSR notes. Whatever combined adjusted offense level is ultimately determined by the court, 3 points for acceptance of responsibility should be included.

2. **Restitution**

As Mr. Popp noted in the Defense Sentencing Memorandum (pp. 10-11), there is a significant sum of money on deposit with the Clerk of Court's office, which was derived from an orderly liquidation of gold and silver assets seized from Popp during execution of a search warrant at the outset of this case some years ago. Popp did not file a motion challenging the search and seizure and agreed to the liquidation as part of the plea agreement. This is also indicative of his acceptance of responsibility and intent to try to make the Government whole.

The Government's memorandum opposes a reduction to cover the trial work period (TWP) as is proposed in the defense sentence memorandum. A review of Popp's Social Security case file and records for the original SSDI claim in 2004 and the renewed claim made by Mr. Popp in 2013 show that the TWP was not applied.

The Government suggests that Popp should litigate the TWP within an administrative proceeding, and not have such determined at this sentencing. The problem with this is that if the court sets restitution on the SSDI count at a certain amount, the Clerk will pay such. Counsel for Popp maintains that the court should make such an order with the TWP amount reduction requested in the defense sentencing memorandum.

Alternatively, counsel for Popp requests that the Court set restitution payments for the SSDI count at no more than $174,670, with payment to be made to the SSA by the Clerk of Court, upon presentation of SSA Billing Statements by Popp's counsel, which payment demands the agency has recently sent to Popp. This will ensure that the payment amounts go to the right office of the SSA and are properly received and accounted for. If the total amount requested by the SSA ends up being somewhat less than the $174,670 the Government requests, after the agency applies its administrative determinations, then the remaining balance of funds can be held by the Clerk of Court, until further order of the court to distribute such to the IRS for repayment of taxes, interest and penalties due. Counsel for Popp requests that such payment(s) be made by the Clerk of Court upon presentation of IRS notices of payment due, to be submitted

3

by Popp's counsel in coordination with his legal tax advisor and representative, Atty. Greg Sell.

The important factor which is most significant is that the money is there for restitution on the two counts Popp pled guilty to, which makes this case and Popp's acceptance of responsibility and repayment unusually positive. Counsel for Popp believes that this also merits the court to impose a non-prison sentence.

**3. Acceptance of Responsibility**

Mr. Popp has not minimized his responsibility or criminal culpability by advising the PSR writer and the court of the truth, i.e., that he would not have gotten into the 419 death and disability plan but for his accountant referring him to the financial advisor, who sold the plan to him in conjunction with the accountant, with the accountant doing Popp's taxes thereafter. That is not minimizing; that is simply the truth. However, Popp signed his tax returns and is responsible, both civilly and criminally for that willful act. Popp has accepted responsibility, pled guilty and wants to repay the IRS for taxes due, interest and penalties, as are worked out by his tax counsel Atty. Sell. Counsel is perplexed by the Government insinuating that this is not acceptance. Going to trial would not be acceptance. Not agreeing to orderly liquidation would not be acceptance. A guilty plea and payment of restitution is acceptance.

As to the SSDI count, Popp has pled guilty and wants to and will pay the restitution. He did lie during the 2008 Social Security review interview. That was wrong. Popp does not blame his accountant for what he said to the Social Security

representatives. That was Popp's doing and he has and does admit such, and entered a guilty plea. That is acceptance of responsibility.

The Government states that he should have "known intuitively" that collecting SSDI benefits while engaging in substantially gainful activity (SGA) was illegal. Popp has admitted to the charge, admitted to engaging in SGA, but what SGA is, contrary to the Government's implication, is not "intuitive". Had Popp earned millions in interest, stock transactions, dividends or loan repayments, he still would have been eligible for SSDI. See comparative chart at Tab 1. It was because he went to work again at the business he founded and received payments during that time that he was not qualified to receive SSDI. He admitted by entering into the plea agreement, by pleading guilty and in his statements to the PSR writer that he did this, he should not have, and regardless of whether he asked enough or the right questions back the, he accepts responsibility and will repay SSA.

4.  Sec. 3553 factors

The Government insinuates that Mr. Popp was never really visually impaired sufficient to receive SSDI, or that his condition has improved. Popp was and remains visually impaired. Counsel for Popp previously shared with the PSR writer and with counsel for the Government medical records of Popp's visual acuity assessments, which were done by the objective Zeiss autorefractor.

The autorefractor is a computer-controlled machine used during an eye examination to provide an objective measurement of a person's refractive error and prescription for glasses or contact lenses in diopters. This is achieved by measuring how

5

light is changed as it enters a person's eye. The prescription in diopters can be converted to the Snellen scale (20/20).

The average person with healthy eyesight has 20/20 focus on the Snellen scale. This is a benchmark measure of what you should be able to see at a distance of 20 feet. If one is 20/200, that means that you can see at 20 feet what a person with normal eyesight sees at 200 feet. 20/400 means that you see at 20 feet what a person with normal eyesight sees at 400 feet. See representative example of 20/200 and 20/400 vision at Tab 2.

Larry Popp was diagnosed with optic neuropathy beginning in 2003, and has been objectively tested regularly with the autorefractor machine (which does not require feedback from patient like an eye chart exam). In 2004, he was found to have 20/400 and 20/300 visual acuity in his eyes, and in 2005 - - 20/800 and 20/400. See reports attached at Tab 3. More recently, his visual acuity was measured at 20/150 and 20/70. See Tab 4.

Mr. Popp's vision diagnosis and treatment records and tomographic tests definitively show that he also suffers from large holes or gaps in his visual field, as well as variations in visual acuity during the day (better in morning and diminishing by afternoon and evening). Mr. Popp has managed to adapt himself, as best he can, to trying to cope with his visual disability. This does not make Mr. Popp a good candidate for incarceration in the penitentiary, despite what the BOP doctor's letter submitted by the Government states, as he will be at greater risk of injuring himself and will be more vulnerable and at significant risk of being injured and taken advantage of by others.

Imprisonment is not necessary to protect the public, or to deter Mr. Popp from future misconduct, and not sending him to prison will not unduly depreciate the seriousness of the crimes he has been convicted of. He will not get the necessary medical treatment and medications he needs in prison, which the BOP letter almost concedes, and it will be very expensive and counterproductive to house him there.

The argument that imprisoning first offenders convicted of nonviolent crimes, at a great cost to the taxpayer, is not just in vogue, it has been endorsed by Supreme Court Justice Anthony Kennedy's in his 2004 speech to the ABA, and by the current Attorney General of the United States in his April 2013 speech to the National Action Network. In that speech, AG Holder called for judges to exercise more flexibility in determining sentences. "Too many people go to too many prisons for far too long for no good law enforcement reason," said AG Holder, which "imposes a significant economic burden – totaling nearly $83 billion in 2009 alone – along with human and moral costs . . . "

As the POMS directive attached to the initial defense sentencing memorandum, restitution is sought and probation is the typical sentence in this kind of case. Common sense says it is more efficient and better fulfills the ends of justice to not spend out in wasted cost of imprisonment and health care treatment while incarcerated, what is brought in by restitution payments that will be made in this case. Imposition of a non-prison sentence will mean that the Government will have a net gain, not just break even or show a loss. Recent federal plea agreements, penalties and sentences in the Johnson & Johnson, J.P. Morgan and Beanie Babies tycoon Ty Warner's cases are in accord with

7

this approach, and an individual criminal defendant is just as worthy of such consideration as a corporation or billionaire is.

## RECOMMENDATION

Counsel for Mr. Popp respectfully requests that the court not sentence Mr. Popp to prison. A probation sentence of five (5) years concurrent on each count, with conditions including repayments to the Social Security Administration, payments to the IRS, in an amount to be determined, community service and vocational rehabilitation and training is the most reasonable and appropriate sentence under sec. 3553(a). If the court believes that some additional punishment is required, placing Mr. Popp on home detention or a short stint in a local, community corrections facility, with release for work and vocational training, counseling, treatment, child care and community service would be recommended in the alternative. If the court nonetheless decides to impose some prison, it should be no more than one year and one day, with a recommendation to BOP that such be served at an RRC or federal medical facility.

Dated this 20th day of January, 2014.

                Respectfully submitted,

                GIMBEL, REILLY, GUERIN & BROWN LLP

                By: /s/Raymond M. Dall'Osto
                    RAYMOND M. DALL'OSTO
                    State Bar No. 10017569
                    Attorneys for Defendant Lawrence J. Popp

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone:  414/271-1440
Email:    dallosto@grgblaw.com
*Crim/Popp,Lawrence/reply govt sent memo*